IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Cheryl Lynn Cox, | ) | OPINION |
| | ) | |
| Petitioner, Appellee, and Cross-appellant, | ) | Case No. 20110265-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (August 16, 2012) |
| Bruce Cox, | ) | |
| | ) | 2012 UT App 225 |
| Respondent, Appellant, and Cross-appellee. | ) | |
| | ) | |

-----

Third District, Salt Lake Department, 054904297
The Honorable Robert K. Hilder

Attorneys:     Michael K. Mohrman, Tracy C. Schofield, and Jamie G. Pleune, Salt
               Lake City, for Appellant and Cross-appellee
               Larry B. Larsen, Salt Lake City, for Appellee and Cross-appellant

-----

Before Judges McHugh, Davis, and Thorne.

McHUGH, Presiding Judge:

¶1     Bruce Cox (Husband) appeals from the trial court's order modifying his payment obligations to his former wife, Cheryl Lynn Cox (Wife).[1]  Although the order granted Husband's Petition to Modify the Divorce Decree (the Petition), he contends that the

---

     [1]Although Wife filed a notice of cross-appeal, she did not file a compliant brief responding to Husband's arguments.  Therefore, there are no issues before us related to Wife's cross-appeal.

trial court erred in making it effective as of the date of the trial on his Petition, rather than the date of Wife's remarriage or the month after he served his petition to modify. We affirm in part, and reverse and remand in part.

BACKGROUND

¶2     Husband and Wife were married in 1980 and divorced pursuant to a stipulated Decree of Divorce (the Decree) on August 30, 2005. At the time of the divorce, the parties had two minor children. After initiating the divorce proceedings, Wife's counsel proposed a written Stipulation and Property Settlement Agreement (the Proposed Agreement) and submitted it to Husband for review. Husband did not retain an attorney. After some minor negotiations regarding the Proposed Agreement, the parties executed it. They also approved the Decree implementing its terms.

¶3     The Decree provided that Husband would pay $1,169 per month in child support until the minor children turned eighteen or graduated from high school (collectively, emancipation), whichever occurred later. Additionally, although the Decree specifically stated that "[n]either party shall be awarded alimony from the other party," it contained a "property settlement," whereby Husband was required to pay Wife $3,000 per month for a period of ten years. The purpose of the payment was to allow Wife to seek "training or job related skills" that she lacked at the time of the divorce. The Decree states that the $3,000 monthly payment includes Husband's child support obligation. In addition, the Decree orders that $50,000 of equity in the marital home be divided equally between the parties, with Husband's $25,000 to be secured by an equitable lien against the home and made payable upon the occurrence of certain events, including Wife's remarriage.

¶4     Wife remarried on December 29, 2006, but Husband did not learn of this event until 2008.[2] Thereafter, in June 2007, the oldest of the two children became emancipated. Despite Wife's remarriage and the oldest child's emancipation, Husband

_____

[2]The trial court found that there was no evidence that Wife intentionally withheld this information from Husband.

continued to pay at least $3,000 per month[3] until January 2009, when he received legal advice that he could reduce the payments to $695, the amount of his child support obligation for the remaining minor child.

¶5     On February 12, 2009, Husband filed the Petition, alleging a material change in circumstances based on Wife's remarriage and the older child's emancipation, and claiming that the property settlement in the Decree was actually alimony that terminated upon Wife's remarriage. After trial on the matter, the court issued Findings of Fact and Conclusions of Law. It first determined that the Petition could not be treated as "a bona fide petition to modify" because Wife's remarriage and a child's emancipation were both foreseeable at the time of the divorce. Nevertheless, noting the "unusual circumstance" that the $3,000 per month property settlement payment included child support but could not be reduced when the children became emancipated, the trial court concluded that it had continuing jurisdiction under Utah Code section 30-3-5(3). *See* Utah Code Ann. § 30-3-5(3) (Supp. 2012)[4] (providing the district court with "continuing jurisdiction to make subsequent changes or new orders for . . . distribution of the property and obligations for debts as is reasonable and necessary").

¶6     On the merits, the trial court concluded that the property settlement "was in actuality an agreement to pay $3,000 per month for ten years with part of that amount designated as statutory child support as long as it was owed, and the balance to serve as support for the wife . . . as alimony." The court reasoned that Wife "made no case, either legally or factually, in support of a claim that the payments (except the child support portion) were anything other than a form of spousal support." It also explained that "there was in fact virtually no property underlying the property settlement agreement, and [that Husband] received nothing of value in return for his promise to pay close to $300,000 over ten years." Ultimately, the trial court concluded that the payment was alimony, despite the Decree's attempt to characterize it as a

---

[3]Although the Decree required Husband to pay only $3,000 per month, at trial it was undisputed that Husband paid Wife $3,524 per month, which Husband argued included a $524 per month overpayment.

[4]Because the relevant provisions of these statutes have not been materially changed, we cite the current version of the Utah Code for the convenience of the reader.

property settlement. However, the trial court did not indicate that this conclusion should be applied retroactively.

¶7 The trial court next considered when Husband's obligation to pay Wife the $3,000 per month ceased. First, it acknowledged that alimony obligations generally terminate automatically upon the receiving spouse's remarriage. *See* Utah Code Ann. § 30-3-5(9). Nevertheless, the trial court determined that there were equitable reasons to delay termination of the $3,000 payments in this case until December 1, 2010, the day of the trial on Husband's Petition. First, the court reasoned that Wife "relied, in good faith, on the expectation that support payments of as much as $3,000 per month would continue for a full ten years" and that up until the court's decision, it was reasonable for Wife to believe that "she still ha[d] some time to complete necessary training to improve her earning ability." Second, the trial court indicated that because Wife had separated from her new husband and Husband stopped paying most support in the beginning of 2009, Wife had limited means to repay the alimony. As its third equitable consideration, the trial court found that Wife would be unable to reimburse Husband for all of the amounts she received after her remarriage and that Husband was "in a far better financial position than [Wife] to bear the loss incurred up to the present." For the same reasons, the trial court rejected Husband's alternative argument that alimony should terminate on March 1, 2009, the first month after service of the Petition on Wife. *See* Utah Code Ann. § 78B-12-112(4) (2008) ("If the tribunal orders that the support should be modified, the effective date of the modification shall be the month following service on the parent whose support is affected.").

¶8 Applying the day of trial as the termination date, the trial court calculated the obligations of the parties, concluding that Wife was "entitled to a credit against [Husband] for unpaid alimony due and owing through November 30, 2010 in the amount of $32,055[]." However, the court also determined that because Wife failed to pay Husband his $25,000 equity interest in the marital home upon her remarriage as required by the Decree, Husband was "entitled to a credit against [Wife] . . . and interest thereupon in the amount of $32,515[]." Comparing those amounts, the trial court calculated that the net balance due to Husband was $460.

¶9 Finally, although the trial court determined that Husband was the prevailing party, it concluded that it was equitable for the parties to bear their own fees and costs. The trial court based this decision on the meritorious arguments on both sides and Wife's greater need. Husband filed a timely appeal.

## ISSUES AND STANDARDS OF REVIEW

¶10   Husband contends that the trial court erred in making the effective date of its ruling the date of trial, which is nearly four years beyond Wife's remarriage. Specifically, Husband argues that the plain language of Utah Code section 30-3-5(9) does not permit the trial court to extend alimony payments based upon equitable considerations. *See generally* Utah Code Ann. § 30-3-5(9) (Supp. 2012). The trial court's interpretation of a statute is a question of law that we review for correctness. *See Connell v. Connell*, 2010 UT App 139, ¶ 6, 233 P.3d 836. In determining the correct interpretation of the statute, "our primary goal is to evince the true intent and purpose of the Legislature." *Stone Flood & Fire Restoration, Inc. v. Safeco Ins. Co. of Am.*, 2011 UT 83, ¶ 18, 268 P.3d 170 (internal quotation marks omitted). We do so by first looking "to the plain language of the statute," presuming "that the legislature used each word advisedly and read[ing] each term according to its ordinary and accepted meaning." *Id.* (internal quotation marks omitted).

¶11   Next, Husband claims that even if the trial court was not required to terminate Husband's obligation to pay Wife $3,000 per month as of the date of her remarriage, it was required to relieve Husband of that obligation as of the month following service of the Petition on Wife. *See* Utah Code Ann. § 78B-12-112(4) (2008) (providing that if the court grants a petition to modify a spousal support order, "the effective date of the modification shall be the month following service"). The trial court's statutory interpretation is a question of law that we review for correctness. *See Connell*, 2010 UT App 139, ¶ 6.

¶12   Finally, Husband argues that the trial court erred by determining that the question of whether his monthly payment obligation decreased upon the emancipation of the older minor child was moot. We review the issue of mootness de novo, affording no discretion to the trial court. *See Cedar Mountain Envtl., Inc. v. Tooele Cnty.*, 2009 UT 48, ¶ 7, 214 P.3d 95.

ANALYSIS

## I. The Trial Court Was Not Required to Terminate Husband's Payments to Wife as of the Date of Wife's Remarriage.

¶13    Utah Code section 30-3-5(9) provides, in relevant part, that "[u]nless a decree of divorce specifically provides otherwise, any order of the court that a party pay alimony to a former spouse automatically terminates upon the remarriage or death of that former spouse." Utah Code Ann. § 30-3-5(9). According to Husband, although other subsections of section 30-3-5 provide flexibility to the trial court in achieving an equitable result, subsection (9) does not. *Compare id.* § 30-3-5(1) (allowing the court to include "equitable orders" in a divorce decree), *and id.* § 30-3-5(8)(c) (requiring the court to consider "all relevant facts and equitable principals" in determining alimony), *with id.* § 30-3-5(9) (providing that any order to pay alimony "automatically terminates upon the remarriage" of the recipient spouse). We agree with Husband that under subsection (9), the Utah Legislature has afforded no flexibility where an "order of the court that a party pay alimony" does not "specifically provide[] otherwise." *See id.* § 30-3-5(9). In the present case, however, the Decree ordered Husband to pay a property settlement for ten years. Consequently, it is not an "order of the court that a party pay alimony." *See id.*

¶14    Nevertheless, Husband argues that the trial court had no discretion to deviate from the mandate of subsection (9) that alimony automatically terminates upon remarriage. In particular, Husband argues that the law is concerned with substance not form, notes that the trial court concluded that there was no serious question that these payments were alimony, and asserts that Wife was required to look to her new husband for support rather than her former husband. Furthermore, Husband cautions that allowing a party to enjoy a windfall that is unambiguously precluded when payments are accurately identified would be contrary to public policy. Notwithstanding the validity of Husband's arguments, they do not support the automatic termination of the $3,000 payments as of the date of Wife's remarriage under the plain language of subsection (9). *See State v. MacGuire*, 2004 UT 4, ¶ 15, 84 P.3d 1171 ("We need not look beyond the plain language [of a statute] unless we find some ambiguity in it." (internal quotation marks omitted)). Until the trial court issued its decision on the Petition, over five years after Husband and Wife agreed to the Decree, Husband was required to pay a property settlement, not alimony. Under these circumstances, the payment obligation

could not automatically terminate upon Wife's remarriage because at that time, it was not alimony.

¶15  Our conclusion is consistent with the Utah Legislature's treatment of the termination of alimony under analogous circumstances.  While an order that a party pay alimony "automatically terminates upon the remarriage" of the former spouse, *see id.* § 30-3-5(9), it "terminates upon *establishment* by the party paying alimony that the former spouse is cohabiting."  *See* Utah Code Ann. § 30-3-5(10) (Supp. 2012) (emphasis added).  Whether a relationship bears the hallmarks of a marriage-like cohabitation is a fact-intensive inquiry.  *See Myers v. Myers*, 2011 UT 65, ¶ 24, 266 P.3d 806 ("[A] marriage-like cohabitation relationship is difficult to define with a hard-and-fast list of prerequisites.").  As a result, the legislature has provided that before alimony obligations are terminated, the payor spouse must establish that his or her contention that the recipient spouse is cohabiting is accurate.  *See* Utah Code Ann. § 30-3-5(10).

¶16  Similarly, further proceedings were required here to confirm Husband's contention that the $3,000 he agreed to pay for ten years as a "property settlement," was really an alimony obligation that should have been extinguished due to Wife's remarriage.[5]  Indeed, the trial court's conclusion on that issue was based on the evidence presented at trial, including that the marital estate did not include sufficient property to warrant a $300,000 property award to Wife.  As with cohabitation, where a party seeks a modification to the divorce decree based on a challenge to the classification of a payment in the court's binding order, the validity of that claim must be *established* and the order modified before the obligation previously imposed by the court is terminated.[6]  Consequently, the trial court was not bound by subsection (9) to

---

[5]Because Wife has not responded to Husband's arguments, we do not consider whether the trial court correctly modified the stipulated terms of the Decree, which included their decision to categorize the payments as a property settlement with the intent to provide Wife with a stream of income for ten years, irrespective of her remarriage or cohabitation, in exchange for Wife's agreement not to seek alimony for the length of the twenty-five year marriage.

[6]This approach is particularly appropriate where, as here, the party subsequently challenging the classification of the payment in the divorce decree stipulated to the terms of that decree.

terminate Husband's payment obligation retroactively to the date of Wife's remarriage, and we affirm the trial court on this issue.

## II. The Trial Court Was Required to Make Its Order Effective As of the Month After Husband's Petition Was Served on Wife.

¶17   Husband next argues that even if the trial court was not required to terminate his payment obligations as of Wife's remarriage, it was required to do so effective the month after Wife was served with the Petition. Husband relies on Utah Code section 78B-12-112(4), which provides as follows:

> A child or spousal support payment under a support order may be modified with respect to any period during which a modification is pending, but only from the date of service of the pleading on the obligee, if the obligor is the petitioner, or on the obligor, if the obligee is the petitioner. If the tribunal orders that the support should be modified, the effective date of the modification shall be the month following service on the parent whose support is affected. Once the tribunal determines that a modification is appropriate, the tribunal shall order a judgment to be entered for any difference in the original order and the modified amount for the period from the service of the pleading until the final order of modification is entered.

Utah Code Ann. § 78B-12-112(4) (2008).

¶18   The plain language of this section makes it applicable to "[a] child or spousal support payment under a support order." *Id.* As discussed, the Decree does not include a spousal support order, instead stating, "Neither party shall be awarded alimony from the other party." However, the Decree does include an order to pay child support and further provides that the child support obligation is included in the $3,000 settlement payment. Furthermore, the basis of the trial court's order relieving Husband of his obligation to pay Wife the full $3,000 was that the portion that is not child support is alimony. Nevertheless, the trial court did not comply with section 78B-12-112(4),

instead exercising its continuing jurisdiction under section 30-3-5(3) over a property settlement issue.

¶19    Irrespective of the basis of the trial court's jurisdiction, it determined that the $3,000 per month was for child support and alimony and then modified that award. The trial court's order relieves Husband of the obligation to pay $3,000 per month as ordered in the Decree but imposes a new obligation to pay child support in the amount of $695 per month for the younger of the parties' children "for the term set forth in the [Decree]." We agree with Husband that the trial court "order[ed] that the support should be modified," thereby requiring "the effective date of the modification" to be the "month following service on the parent whose support is affected." *See* Utah Code Ann. § 78B-12-112(4). Thus, the trial court erred in varying from that statutory mandate.

### III. The Issue of Whether Husband's Payments to Wife Should Have Been Reduced When the Older Child Was Emancipated Is Not Moot.

¶20    Paragraph 12 of the Decree provides that "[Husband] shall pay to [Wife] the sum of $3,000[] per month for the period of ten (10) years as and for a final property settlement. Said payments shall include the child support payment described above in paragraph 6."[7] In turn, the Decree sets child support at "not less than $1,169[] per month as base support for the minor children . . . until said children become[ emancipated]." The trial court concluded "that the property settlement agreement . . . was in actuality an agreement to pay $3,000 per month for ten years with part of that amount designated as statutory child support as long as it was owed, and the balance to serve as support for the wife, or more baldly stated, as alimony." Despite that conclusion, it ruled that "[b]ecause [Wife] remarried sixteen months after the Decree was entered, it is now a moot question whether the alimony/support portion of the payment was intended to increase as the child support obligation was first reduced, then terminated."

¶21    An issue is moot when resolution of it cannot affect the rights of the parties. *See Towner v. Ridgway*, 2012 UT App 35, ¶ 6, 272 P.3d 765 (mem.) (citing *Burkett v. Schwendiman*, 773 P.2d 42, 43-44 (Utah 1989) (mem.)). We agree with Husband that the

---

[7]Although the Decree indicates that Husband's child support obligation is set forth in paragraph 6 of that document, it is actually found in paragraph 3.

issue here is not moot because it affects the calculation of the amount Husband owes to Wife, if any. If the $3,000 payment was reduced by operation of the Decree when each child became emancipated, the amount due to Wife is different than if those payments were fixed at $3,000 under the Decree. For example, the trial court's calculation of the amount due from Husband assumes an obligation to pay $3,000 per month through 2010, despite the fact that the older child became emancipated in 2007. The trial court then used the sum of those $3,000 payments as the baseline from which it determined the amount owed to Wife. It is apparent from the trial court's own calculations that the parties' financial obligations to one another cannot be resolved without first determining the effect of the older child's emancipation in June 2007 on Husband's monthly payment obligation after that date.[8] Consequently, that issue is not moot and we reverse and remand for further proceedings consistent with this decision.[9]

CONCLUSION

¶22    Although the trial court was not required to terminate Husband's support obligation to Wife as of the date of her remarriage, it erred by not making its order effective as of the month after Husband served the Petition on Wife. The calculation of Husband's obligation to Wife, if any, cannot be made without first deciding whether the $3,000 monthly payment was reduced when the oldest child became emancipated.

---

[8]According to Husband's calculations, his unpaid alimony obligation through the month of trial is $19,902 lower than the figure used by the trial court if his monthly payment is reduced by half of the child support award after June of 2007, when the older child became emancipated.

[9]Husband also requests attorney fees on appeal. However, at trial the court determined that it was equitable that the parties bear their own attorney fees. Husband does not challenge that ruling on appeal. Because no fees were awarded by the trial court, "absent a showing of changed circumstances following the trial court's decision warranting such award on appeal, both parties must bear their own fees on appeal." *Wilde v. Wilde*, 2001 UT App 318, ¶ 46, 35 P.3d 341 (internal quotation marks omitted). Husband has not claimed any changed circumstances, and accordingly, we deny his request.

Therefore, this issue is not moot and must be resolved on remand before determining the net amount owed or overpaid to Wife.

¶23    Affirmed in part, and reversed and remanded in part.

_____
Carolyn B. McHugh,
Presiding Judge

-----

¶24    WE CONCUR:

_____
James Z. Davis, Judge

_____
William A. Thorne Jr., Judge