STATE of Utah, Plaintiff, Petitioner, and Cross–Respondent,

v.

Louie Edwin SIMS, Defendant, Respondent, and Cross– Petitioner.

No. 910218.

Supreme Court of Utah.

May 31, 1994.

---

R. Paul Van Dam, Atty. Gen., David B. Thompson, Asst. Atty. Gen., Salt Lake City, for plaintiff.

G. Fred Metos, Salt Lake City, for defendant.

DURHAM, Justice:

In July 1988, the Utah Highway Patrol and the Juab County Sheriff placed a roadblock on Interstate 15 near Nephi, Utah.[1] Police established the roadblock to look for automobile license, registration, and equipment violations, as well as liquor and drug violations. Defendant Louie Edwin Sims was among those stopped. Upon smelling alcohol and seeing an "open" liquor bottle in the back seat, the officers asked Sims for permission to search the interior of his automobile and Sims consented. The officers then discovered remnants of two or three marijuana cigarettes and asked Sims for permission to search the trunk. Sims again consented. When this latter search revealed two small plastic bags containing marijuana, Sims attempted to withdraw his consent. Asserting that they had probable cause to continue, the officers resumed the search and discovered a one-kilogram brick of cocaine in the car's spare tire well.

Sims was subsequently convicted of possession of a controlled substance with intent to distribute. The court of appeals reversed Sims's conviction, holding that the roadblock violated both the state and federal constitutions and that Sims's consent to the search was not sufficiently attenuated from the illegal stop to be valid. *State v. Sims*, 808 P.2d 141, 147, 150, 152 (Utah Ct.App.1991). We granted the State's petition for certiorari.

The State raises two issues in its petition. First, it claims that the court of appeals incorrectly held that the officers violated article I, section 14 by establishing a roadblock that was not expressly authorized by statute. Second, the State asks us to review the court of appeals' ruling that Sims's consent was not sufficiently attenuated from the illegal stop. Because the state constitutional issue is moot and the attenuation issue is governed by res judicata, we dismiss the writ of certiorari in this case as improvidently granted.

An issue on appeal is considered moot when "the requested judicial relief cannot affect the rights of the litigants." *Burkett v. Schwendiman*, 773 P.2d 42, 44 (Utah 1989); *see also Salt Lake City v. State Tax Comm'n*, 813 P.2d 1174, 1177 (Utah 1991); *Duran v. Morris*, 635 P.2d 43, 45 (Utah 1981). When an issue is moot, "[j]udicial policy dictates against our rendering an advisory opinion." *Black v. Alpha Fin. Corp.*, 656 P.2d 409, 410–11 (Utah 1982); *see also Merhish v. H.A. Folsom & Assocs.*, 646 P.2d 731, 732 (Utah 1982); *State v. Stromquist*, 639 P.2d 171, 172 (Utah 1981) (per curiam).

■ In this case, the court of appeals held that the roadblock violated the state constitution because it was not expressly authorized by statute. *Sims*, 808 P.2d at 147–50. The court of appeals also held that the roadblock violated the federal constitution. *Id.* at 145–47. Although the State has appealed the state constitutional ruling, it does not challenge the court's separate conclusion that the roadblock violated the federal constitution. The State's decision to challenge the state ruling but not the federal leaves the case in a unique procedural posture. Even if we were to adopt the State's arguments concerning article I, section 14, and reverse the court of appeals' state constitutional holding, it would have no legal effect on the parties. Because the State chose not to challenge the court of appeals' Fourth Amendment holding, and because the Fourth Amendment establishes the minimum level of protection against unreasonable searches and seizures, the evidence seized at the roadblock must be suppressed regardless of any decision we might render on the state constitutional issue. There simply is no decision we could render in this case that would allow the State to introduce the evidence seized at the roadblock. The issue is therefore moot.[2]

■ We occasionally invoke an exception to mootness for issues that affect the public interest and are likely to recur yet evade

---

1. The facts are set forth in more detail in the court of appeals' opinion, *State v. Sims*, 808 P.2d 141, 142–44 (Utah Ct.App.1991), and our opinion arising from the related tax commission proceedings. *Sims v. State Tax Comm'n*, 841 P.2d 6, 7 (Utah 1992) (*Sims I*).

2. The same analysis applies to the State's request that we recognize a good faith exception to the exclusionary rule under article I, section 14. Even if we were to recognize such an exception, the evidence would remain excluded.

appellate review. *See Burkett,* 773 P.2d at 44; *State v. Davis,* 721 P.2d 894, 895 (Utah 1986) (per curiam); *Wickham v. Fisher,* 629 P.2d 896, 899–900 (Utah 1981). Given the recent enactment of legislation that purports to authorize the specific type of roadblock involved in this case, *see* Utah Code Ann. § 77–23–104 (Supp.1993),[3] the issue raised by the State—whether article I, section 14 requires roadblocks to be statutorily authorized—is unlikely to recur, let alone evade appellate review. *See Burkett,* 773 P.2d at 44.[4]

■ Mootness also dictates that we decline to address the issue Sims raises in his cross-petition for certiorari. In his cross-petition, he argues that article I, section 14 requires individualized suspicion of wrongdoing prior to making any search or seizure. Once again, the court of appeals' Fourth Amendment ruling provides Sims the relief he seeks—suppression of the evidence seized at the roadblock. The State has not appealed that decision. Thus, any opinion we

might render in this case on article I, section 14's requirement of individualized suspicion would be purely advisory.[5]

■ The State next challenges the court of appeals' conclusion that Sims's consent to the search was not sufficiently attenuated from the illegal roadblock. The State claims that the court of appeals' decision is inconsistent with the principles established in *State v. Arroyo,* 796 P.2d 684 (Utah 1990), and *State v. Thurman,* 846 P.2d 1256 (Utah 1993). The State candidly admits that ruling in its favor would require us to overrule *Sims v. State Tax Commission,* 841 P.2d 6 (Utah 1992) (*Sims I* ), a proceeding before the state tax commission that arose from the same incident as the present case. *Id.* at 7.

In *Sims I,* we held that Sims's consent was not sufficiently attenuated from the illegal roadblock and therefore the evidence seized pursuant to that consent was inadmissible in proceedings before the tax commission. 841 P.2d at 10 (Durham & Zimmerman, JJ.); *id.* at 15 (Stewart, J., concurring in the result).[6]

---

3. Whether the enactment of this statute is necessary to render a roadblock constitutional under the Utah Constitution or whether the statute in fact renders such roadblocks constitutional are unresolved issues. In *Sims I,* we expressly reserved the question of "[w]hether constitutionally sufficient standards and guidelines could be incorporated in statutory form." *Sims I,* 841 P.2d at 9.

4. There are other exceptions to the mootness doctrine, including issues that may cause irreparable injury if not decided immediately or issues that involve a continuing controversy even after they are moot for the litigants. *See Reynolds v. Reynolds,* 788 P.2d 1044, 1045–46 (Utah Ct.App. 1990) (listing exceptions to mootness doctrine). None of these exceptions apply to the state constitutional issue raised in this case.

5. We emphasize that not addressing the state constitutional issues raised by the parties says nothing about their merits and does not preclude review of these issues in future cases. Our conclusion that these issues are moot is dictated by the State's decision not to appeal the court of appeals' federal constitutional ruling.

In a concurring opinion, Judge Bench surprisingly claims that in declaring the state constitutional issue moot, "we have necessarily resolved two important questions." His opinion evidences a fundamental misunderstanding of the doctrine of mootness. When declaring an issue moot, a court specifically declines to address the

merits. *See generally* 13 Charles A. Wright et al., *Federal Practice and Procedure* § 3529 (1984). If a decision finding an issue moot could be interpreted as implicitly resolving a substantive legal question, as Judge Bench suggests, the mootness doctrine would have little meaning. Accordingly, we emphasize that our decision should not be construed as stating a preference for analysis under the Fourth Amendment rather than article I, section 14. Furthermore, because the state constitutional issue is moot, we cannot reach the substantive issue of which interpretative model is appropriate when courts are confronted with claims under both article I, section 14 and the Fourth Amendment.

6. In *Sims I,* the court divided over the appropriate method of constitutional analysis. Justices Durham and Zimmerman held that the roadblock violated article I, section 14 of the Utah Constitution. *Sims I,* 841 P.2d at 9 (Durham & Zimmerman, JJ.). Justice Stewart, on the other hand, found that the roadblock violated the Fourth Amendment. *Id.* at 15 (Stewart, J., concurring in the result). Despite their disagreement over the proper approach, all three justices agreed that Sims's consent was not sufficiently attenuated from the illegal roadblock. *Id.* at 10 (Durham & Zimmerman, JJ.); *id.* at 15 (Stewart, J., concurring in the result). Associate Chief Justice Howe and Chief Justice Hall assumed for analytical purposes that the roadblock was unconstitutional, and presumably that Sims's consent was not sufficiently attenuated from the illegal stop, but argued that the exclusionary rule

Thus, in reality, it is our conclusion in *Sims I,* not the decision rendered by the court of appeals, that the State asks us to review. Principles of finality underlying the doctrine of res judicata preclude such review.

 The doctrine of res judicata, which encompasses both claim preclusion and issue preclusion, is designed to prevent the relitigation of issues that have been fully adjudicated. *Salt Lake Citizens Congress v. Mountain States Tel. & Tel.,* 846 P.2d 1245, 1251–52 (Utah 1992); *Jacobsen v. Jacobsen,* 703 P.2d 303, 305 (Utah 1985); *Penrod v. Nu Creation Creme, Inc.,* 669 P.2d 873, 875 (Utah 1983). The doctrine applies "when there has been a prior adjudication of a factual issue and an application of a rule of law to those facts. In other words, res judicata bars a second adjudication of the same facts under the same rule of law." *Salt Lake Citizens Congress,* 846 P.2d at 1251–52. The attenuation issue was squarely before this court in *Sims I* and we resolved it in Sims's favor. Our prior decision under the same factual scenario is conclusive on this point, and we decline to revisit it here.[7]

We therefore dismiss the writ of certiorari in this case as improvidently granted.

ZIMMERMAN, C.J., and STEWART, Associate C.J., concur.

HOWE, Justice, concurring in the result:

I concur in the result. In doing so, I express no opinion as to the constitutionality of the roadblock under either the federal or the state constitution. I am willing for the purposes of this case to abide by the State's concession that the roadblock violated the United States Constitution, which renders moot any question of violation of rights under the Utah Constitution. I agree with Judge Bench that the analysis of the court of appeals on the state constitutional issue is dictum.

I likewise express no opinion as to the attenuation issue. Under the view I took in *Sims v. State Tax Commission,* 841 P.2d 6 (1992), it was unnecessary for me to reach that issue. However, a majority of this court did reach that issue, and they decided it favorably to Sims. Thus, res judicata is properly invoked here.

BENCH, Judge, concurring in the result:

I concur in the result reached in the main opinion. I write separately to explain how this decision affects the issues raised under our state constitution and to express my reservations in the treatment of the attenuation issue.

STATE CONSTITUTION ANALYSIS

I agree that the issues raised under our state constitution are moot. In so holding, we have necessarily resolved two important questions: First, we have rejected the primacy approach to state constitution analysis in this area of the law. Second, the state constitution analysis undertaken by the court of appeals is dictum.

I. Rejection of the Primacy Approach

The State argues this case under the state constitution, conceding that the roadblock violated the Fourth Amendment. Therefore, the only possible reason the State's concession could render this case moot is that we have looked first to the federal constitution. By holding that this case is moot, we have implicitly rejected the primacy approach to interpreting our state constitution. Under the primacy approach, we would look first to decide the issue under the state constitution; if the state constitution resolves the issue, we would not even consider the federal constitution. *See* Milo S. Marsden, *The Utah Supreme Court and the Utah State Constitution,* 1986 Utah L.Rev. 319, 326 (citing Hans

should not apply to proceedings before the tax commission. *Id.* at 21 (Howe, Assoc. C.J., & Hall, C.J., dissenting).

7. Even if res judicata did not preclude review of the attenuation issue, stare decisis would. Stare decisis requires that a decision rendered by a court in a particular factual context govern later

decisions by that court arising under the same or similar facts. *See State v. Thurman,* 846 P.2d 1256, 1269 (Utah 1993). Although stare decisis is not inflexible or mechanical as it applies to courts of last resort, *see State v. Menzies,* ⸺ P.2d ⸺, ⸺ 235 Utah Adv.Rep. 23, 25 (1994), we do not overrule our precedent lightly and decline the State's invitation to do so here.

Linde, *Without "Due Process"*, 49 Or.L.Rev. 125, 133 (1970)). Were we to apply the primacy approach in this case, the State's concession under the federal constitution would be irrelevant unless we first held the search to be valid under the state constitution. This we have not done. We have therefore necessarily rejected the primacy approach in this case.[1]

## II. Dictum

The court of appeals analyzed this case under both the federal constitution and the state constitution. *See State v. Sims*, 808 P.2d 141, 145–150 (Utah Ct.App.1991). Because we have held that the issues raised under the state constitution are moot, any discussion of the state constitution is unwarranted. The state constitution analysis undertaken by the court of appeals must therefore be considered to be mere dictum. *See, e.g., Consolidation Coal Co. v. Emery County*, 702 P.2d 121, 125 (Utah 1985) (language was dictum "in that it was not essential to the resolution of the issue in the case").

## ATTENUATION

The standard for deciding whether consent is sufficiently attenuated from the illegal stop was set forth by this court in *State v. Thurman*, 846 P.2d 1256 (Utah 1993). This standard requires consideration of three factors: "[1] 'the purpose and flagrancy of the official misconduct,' [2] the 'temporal proximity' of the illegality and the consent, and [3] 'the presence of intervening circumstances.'" *Id.* at 1263 (quoting *Brown v. Illinois*, 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975)). Like most questions involving application of law to fact, attenuation should be decided in the first instance by the trial court. *See State v. Pena*, 869 P.2d 932, 937 (Utah 1994) (appellate court grants at least some discretion to trial court's application of law to fact); *State v. Barnhart*, 850 P.2d 473, 475–77 (Utah Ct.App.1993) (same).

The roadblock in the present case occurred before roadblock standards under the federal

constitution had been established. *See Michigan Dep't of State Police v. Sitz*, 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990). A trial court might therefore reasonably conclude, under the "purpose and flagrancy" prong, that defendant's consent in the present case was attenuated from the illegal stop. Before *Pena* was decided, however, this court had already dispositively ruled on the attenuation question in Sims's stop. *See Sims v. State Tax Comm'n*, 841 P.2d 6, 10 (Utah 1992). While I believe this court erred in deciding the issue of attenuation for the first time on appeal, the doctrine of res judicata prohibits us from now revisiting this question. *See Salt Lake Citizens Congress v. Mountain States Tel. & Tel. Co.*, 846 P.2d 1245, 1251–52 (Utah 1992).

HALL, J., did not participate herein; BENCH, Court of Appeals Judge, sat.

---

1. Determining which analytical model we will utilize in interpreting our state constitution (primacy, interstitial, etc.) is fundamentally different from determining the substantive issues in a case. Our implicit rejection of the primacy approach is therefore not a determination on the merits of the substantive issues raised under our state constitution.