42 F.3d 1407
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Timothy J. FRAIN, Defendant-Appellant.
 No. 94-4080.
 United States Court of Appeals, Tenth Circuit.
 Dec. 1, 1994.
 
 ORDER AND JUDGMENT[1]
 Before TACHA, FAIRCHILD[2] and LOGAN, Circuit Judges.
 
 
 1
 Defendant Timothy J. Frain appeals the denial of his motion to suppress evidence, reserved when he entered a conditional guilty plea to a charge of possession with intent to distribute marijuana, in violation of 21 U.S.C. 841(a)(1) and (b)(1)(C). He challenges the district court's findings that the initial stop of defendant's automobile was not pretextual and that he was reasonably detained following the stop.[3]
 
 
 2
 With respect to the stop of defendant's vehicle, Utah Highway Patrol Officer Paul Mangelson testified that he was in his patrol car on the median of Interstate 15 when he observed defendant's car pass another vehicle traveling down an incline in the road. Mangelson activated his radar, which revealed that defendant was driving seventy-four miles per hour in a sixty-five miles per hour zone. Mangelson followed the car, activating his video and audio recording equipment in time to record his stop of the vehicle.
 
 
 3
 Defendant testified that before the stop he had been traveling at about sixty-five or sixty-six miles per hour on cruise control, and that in passing the other vehicle he might have speeded up to sixty-eight miles per hour. The district court obviously believed the officer's testimony when it found the stop was not pretextual.
 
 
 4
 "A pretextual stop occurs when the police use a legal justification to make the stop in order to search a person or place, or to interrogate a person, for an unrelated serious crime for which they do not have the reasonable suspicion necessary to support a stop." United States v. Guzman, 864 F.2d 1512, 1515 (10th Cir.1988). In determining pretext we apply an objective test: whether under the same circumstances a reasonable officer would have made the stop in the absence of the alleged invalid purpose. Id. at 1515-18.
 
 
 5
 The Utah Highway Patrol policy is to stop vehicles going seventy miles or more in a sixty-five miles per hour zone, although the officer has discretion on what enforcement action to take. Thus, if defendant was clocked traveling seventy-four miles per hour a reasonable officer would stop him. Defendant asserts, however, that he was not speeding and that his out-of-state license plate led Mangelson to think defendant might be carrying drugs. He points to Utah state search and seizure cases concluding that Mangelson has made pretextual stops, and argues that the district court should not have believed Mangelson's testimony. See, e.g., State v. Arroyo, 796 P.2d 684 (Utah 1990) (Mangelson's testimony unpersuasive; stop for following too closely pretextual); State v. Sims, 808 P.2d 141 (Utah Ct.App.) (roadblock stop unreasonable and subsequent consent not voluntary), cert. dismissed as improvidently granted, 881 P.2d 840 (1991); see also United States v. Lyons, 7 F.3d 973 (10th Cir.1993).
 
 
 6
 Whether Officer Mangelson has made pretextual stops is not the issue. The question is whether the district court could properly find Mangelson's testimony credible. We have reviewed the recording of the stop and the entire record on appeal; we cannot conclude that the district court's findings of fact were clearly erroneous.
 
 
 7
 After the stop Officer Mangelson approached the car and asked for defendant's driver's license. The video tape recording shows at this point the officer was leaning down to talk to defendant to the extent that his head was almost inside the driver's window. Mangelson testified that he immediately smelled a strong odor of both burnt and raw marijuana. Defendant gave the officer his Illinois driver's license and a rental agreement indicating that he had rented the car in Las Vegas. Apparently without returning these items, Mangelson asked defendant whether he was carrying contraband, and, upon receiving a negative answer, sought permission to search the vehicle.
 
 
 8
 The officer then directed defendant to step out of the car, which he did. Mangelson took defendant's jacket to check that he did not have a gun in it. His search of the interior of the vehicle did not reveal any marijuana or other contraband, although a search of defendant's jacket after his arrest revealed a smoking pipe and a small baggie of marijuana. The officer then asked for the key to the trunk. When defendant replied that he had lost the key, Mangelson ordered him to empty his pockets, which produced the trunk key. The officer then opened the trunk, revealing a large quantity of marijuana.
 
 
 9
 Defendant argues that even if the stop was not pretextual Mangelson's continued detention of defendant after checking his license and rental agreement was unreasonable. The district court, however, found that Mangelson smelled burnt and raw marijuana when he began talking to defendant. Nothing in the record convinces us that these findings were clearly erroneous. The odor of marijuana emanating from a vehicle gives an officer probable cause to search that vehicle without a warrant. See United States v. Morin, 949 F.2d 297, 300 (10th Cir.1991) (citing United States v. Bowman, 487 F.2d 1229, 1231 (10th Cir.1973)).
 
 
 10
 Defendant's reliance on United States v. Nielsen, 9 F.3d 1487 (10th Cir.1993), is unavailing. In that case the officer testified that he smelled only burnt marijuana coming from the vehicle. A consensual search of the passenger compartment revealed no marijuana or other contraband. Nevertheless, the officer persisted in forcing a search of the trunk, which revealed cocaine but no marijuana. In those circumstances we held there was no probable cause for the search of the trunk. In the instant case, in contrast, Mangelson testified that he smelled both raw and burnt marijuana. Although he found no marijuana in his initial search of the passenger compartment of the vehicle and its contents, his testimony of such a smell was verified both by the later finding of the pipe and baggie of marijuana in defendant's jacket and the large quantity of raw marijuana in the trunk. These facts support the officer's testimony that he smelled raw and burnt marijuana, and support the court's finding that Mangelson had probable cause to search the trunk of the vehicle without a valid consent or a warrant.
 
 
 11
 AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 The Honorable Thomas E. Fairchild, Senior United States Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation
 
 
 [3]
 Defendant also challenges the district court's finding that his consent to the officer's search of defendant's automobile was voluntary. The officer testified that defendant granted him permission to make the search. Defendant testified to the contrary. The audio and video recording does not verify either version because a passing vehicle masked the sound at the time. Because of our holding that the officer had probable cause to search the entire vehicle, including the trunk where a large quantity of marijuana was found, the issue of consent is irrelevant to the determination of this appeal, and we discuss it no further