IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Ronald L. Kelly, | ) | PER CURIAM DECISION |
| | ) | |
| Petitioner and Appellant, | ) | Case No. 20120547-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (October 4, 2012) |
| Board of Pardons, et al., | ) | |
| | ) | 2012 UT App 279 |
| Respondents and Appellees. | ) | |

-----

Third District, Salt Lake Department, 110913698
The Honorable L.A. Dever

Attorneys:     Ronald L. Kelly, Draper, Appellant Pro Se
               Mark L. Shurtleff and Brent A. Burnett, Salt Lake City, for Appellees

-----

Before Judges McHugh, Voros, and Roth.

¶1     Ronald L. Kelly appeals the trial court's orders granting summary judgment in favor of the Board of Pardons (Board) and denying Kelly's postjudgment motions for relief.  This is before the court on its own motion for summary disposition based on the lack of a substantial question for review.  We affirm the court's orders.

¶2     Kelly first asserts that the imposition of a natural life term was an illegal enhancement of his sentence because it was beyond the statutory sentencing limits.  This assertion is the basis for many of Kelly's claims.  He is incorrect that the term of natural life is not within the bounds of the statute.  Kelly was convicted of capital murder.  In 1983, when he was sentenced, the sentencing options for this charge were death or life imprisonment.  *See* Utah Code Ann. § 76-3-206 (1978).  It is clear under the

plain language of the statute that a sentence of life in prison may include the maximum term of life in prison.

¶3      To the extent that Kelly argues that the Board's decision to sentence him to natural life was inappropriate, he fails to raise a substantial question for review. The Board has the authority to determine if, when, and under what conditions an inmate may be released on parole. *See id.* § 77-27-5(1)(a) (Supp. 2012). Decisions of the Board regarding parole "are final and are not subject to judicial review." *Id.* § 77-27-5(3). Judicial review is limited only to "the fairness of the process by which the Board undertakes its sentencing function" and does not include review of the result. *Lancaster v. Board of Pardons*, 869 P.2d 945, 947 (Utah 1994). "[S]o long as the period of incarceration decided upon by the [Board] falls within an inmate's applicable indeterminate range, . . . then that decision, absent unusual circumstances, cannot be arbitrary and capricious." *Preece v. House*, 886 P.2d 508, 512 (Utah 1994).

¶4      The Board has the authority, but not the obligation, to grant parole to inmates. Terms of imprisonment "shall continue until the maximum period has been reached unless sooner terminated or commuted" by the Board. Utah Code Ann. § 77-18-4(3) (2008). "[W]hile the courts have the power to sentence, the Board has been given the power to pardon and parole. These are two separate and distinct powers, neither of which invades the province of the other." *Padilla v. Board of Pardons & Parole*, 947 P.2d 664, 669 (Utah 1997). In setting parole dates, "the Board merely exercises its constitutional authority to commute or terminate an indeterminate sentence that, but for the Board's discretion, would run until the maximum period is reached." *Id.* In this case, the Board exercised its discretion to not grant parole to Kelly and instead decided that his term would be the maximum, life in prison. This term is within the statutory limits and within the Board's discretion.

¶5      Kelly also asserts that the trial court erred in dismissing his claim for discrimination and in not permitting him to amend his petition to better support his claim. Kelly argues that the claim was sufficiently supported in exhibits and affidavits, but he is incorrect. His allegations are mere opinion, conjecture, and conclusions that are not supported by facts. Furthermore, in response to the summary judgment motion, Kelly acknowledged that the statement of undisputed facts was accurate and he did not provide any relevant information sufficient to create a dispute of facts. Accordingly, the trial court did not err in dismissing Kelly's discrimination claim as unsupported.

¶6     Kelly argues that he should have been permitted to amend his petition to cure the lack of sufficient factual information noted by the trial court.  In the trial court, Kelly invoked rule 60(b) of the Utah Rules of Civil Procedure to justify the request for an amendment to his petition.  Rule 60(b) does not apply to Kelly's request.  Amendments to pleadings may be sought under rule 15, *see* Utah R. Civ. P. 15, but Kelly has not shown reason to amend within that rule.  Given the final ruling on the merits, any motion to amend Kelly's petition would be untimely.  Furthermore, Kelly had the opportunity to respond to the Board's motion for summary judgment regardless of what was in his petition, yet he failed to raise any issue of material fact.

¶7     Finally, Kelly argues that a change in the Board's policy regarding eligibility to seek reconsideration violates the prohibition on ex post facto punishments.  One function of the prohibition on ex post facto enactments is to bar laws which retroactively increase the punishment for a crime after its commission.  *See Garner v. Jones*, 529 U.S. 244, 249 (2000).  Retroactive changes in laws governing parole of prisoners in some instances may violate this prohibition.  *See id.* at 250.  Not all retroactive changes are prohibited, however.  The controlling inquiry is whether a retroactive change creates "'a sufficient risk of increasing the measure of punishment attached to the . . . crime[].'"  *Id.* (quoting *California Dep't of Corr. v. Morales*, 514 U.S. 499, 509 (1995)).  Where a change applies only to "a class of prisoners for whom the likelihood of release on parole is quite remote," the change will not violate the prohibition on ex post facto punishments.  *Morales*, 514 U.S. at 510.

¶8     Here, given that Kelly is to serve natural life,[1] he cannot show that extending the time for him to be eligible to petition for reconsideration will create anything more than "the most speculative and attenuated possibility of producing the prohibited effect" of

---

[1]In both *Garner v. Jones*, 529 U.S. 244 (2000) and *California Department of Corrections v. Morales*, 514 U.S. 499 (1995), the parole boards were statutorily required to review inmates sentenced to life for parole at periodic intervals, thereby creating a right to regular parole hearings even if the duration in between reviews changed.  *See Garner*, 529 U.S. at 249; *Morales*, 514 U.S. at 509.  In contrast, the Utah Board of Pardons and Parole has no such requirement.  The Board has the constitutional and statutory power to determine the actual time any inmate will serve so long as it is within the bounds of the statutory sentence, up to and including life.  *See Padilla v. Board of Pardons & Parole*, 947 P.2d 664, 669 (Utah 1997).

increasing the punishment for his crime. *Id.* at 509. Although Kelly asserts that the change in policy "ha[s] severely altered [his] chances at gaining parole," the Board has determined that he is no longer eligible for parole by imposing the sentence of natural life. Therefore, Kelly's "likelihood of release on parole is quite remote." *Id.* at 510. Though the Board will not address his sentence any further on its own, Kelly may petition for reconsideration at ten-year intervals. *See* Utah Admin. Code R671-316-1. Kelly's likelihood of convincing the Board that he should be released on reconsideration is merely speculative. Therefore, extending the time before he is eligible to petition for reconsideration does not violate the ex post facto prohibition.[2]

¶9   Affirmed.

_____
Carolyn B. McHugh, Judge

_____
J. Frederic Voros Jr., Judge

_____
Stephen L. Roth, Judge

---

[2]Furthermore, it is not apparent that there was actually a change in policy affecting Kelly. The policy providing that inmates with terms of natural life may petition for redetermination at ten-year intervals was in place ten years before Kelly received the decision that his sentence would be natural life.